The next case for argument, United States v. Harrington, Ms. Bierma. Good morning, your honors. May it please the court, my name is Erica Bierma and I have been in this matter. The sole issue in this matter is whether or not the district court erred in finding that Mr. Harrington waived his right to counsel at sentencing. And we would respectfully submit that there was an invalid waiver. As this court's aware, the court must consider whether and to what extent the district conducted a formal hearing on the defendant's decision to represent himself. And I would respectfully submit that the hearing that was conducted in this matter was insufficient to find a waiver of Mr. Harrington's right to counsel at sentencing. The questions were very brief. They asked if Mr. Harrington had ever filed a post-trial motion. Has he ever represented himself at sentencing? Has he ever cross-examined or conducted examination of a witness? Has he ever argued a motion? And has he reviewed the sentencing guidelines? And was he under the influence of drugs or alcohol or medication? And I respectfully submit that that colloquy was insufficient to find a valid waiver of counsel. The court also has to consider what other evidence is in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation. I would submit that there isn't any additional evidence that would support a valid waiver of counsel in the sense that Mr. Harrington was a career offender. Mr. Harrington faced a 10-year mandatory minimum. He was not advised of the statutory maximum penalties. He was not advised of the fact that there had been an 851 filed, so it was possible that he may have been a career offender. And he was not advised of the disadvantages of proceeding. What more do you think? He had to know what the charges were and what the penalties were. That would have been handled at some earlier stages, and I thought the prosecutor brought that out in this case. So what else did the judge need to tell him? I think that the judge in the district court should have advised Mr. Harrington that... I mean, he was advised of the penalties at arraignment, obviously. He said that you're facing your statutory penalty, but he did not advise him that these were the statutory maximum penalties in this case. He should have said, you're facing up to life imprisonment. You have a 10-year mandatory minimum. The government has filed an 851. That means you have a 10-year mandatory minimum. You may be a career offender, which totally changes the guideline calculation for your case. He should have advised him. Would the sentencing have been delayed substantially if a lawyer had been appointed for him? I don't believe that the sentencing would be substantially continued, because at this point where we were at, the pre-sentence report had been filed, and strike that. What had happened is he was allowed to proceed pro se, and Mr. Harrington did not have a lawyer to discuss the pre-sentence report with. He did not have standby counsel. He didn't have anybody. So sentencing probably could have continued within a couple of weeks to maybe a month had he received... Was he in jail or was he on bond? He was in jail, Your Honor. He was in jail, yes. He was, Your Honor. And he had been in jail the entire time. He hadn't been out on bond during this entire case. But I do not believe that it would have substantially continued sentencing. I believe that appointed counsel or even standby counsel to allow Mr. Harrington to consult with going into sentencing. He didn't have standby counsel during the time? He did not, Your Honor. But he'd already been through two lawyers, right? Yes, he did, Your Honor. Okay. And at the time that the second lawyer had been discharged, the district court did not advise Mr. Harrington, this is it. I'm not appointing any other lawyers to you. It's either you work with Mr. Leffel or you're going to proceed pro se. There was no conversation with Mr. Harrington like that. And also there was no standby counsel either to at least allow Mr. Harrington to consult with had he had questions. Does a defendant who's exercising his Faretta right have a right to standby counsel? I don't think that there's a right per se, Your Honor, but I think that it's probably a better practice. No doubt. But you've also got a district judge who is obviously fed up with games by the defendant. That's clear from these exchanges. And I would think that that's a factor that under our case law, this evidence of trying to game the system by a veteran of the system, is something that the district court could consider, and we can consider in deciding whether the waiver was knowing and voluntary. Yes, Your Honor. I agree that the case law does say that if a defendant is, if you may answer the question, Your Honor. Please. If the defendant's own actions are causing the pro se representation, but I respectfully submit that I believe that his behavior is consistent with unsophistication in the system. Yes, he's been through the system before, but he has never been indicted federally before. He has never proceeded to sentencing on his own before. He's familiar with the state system, you're saying? Yes, he is, Your Honor. I do not argue that fact, Your Honor. But, I mean, when you're talking about a career offender with a statutory, mandatory minimum and a statutory maximum of life. Thank you, Your Honor. Okay. Well, thank you very much, Ms. Bierma. Mr. Walters? Good morning, Your Honors. May it please the Court. Greg Walters on behalf of the United States. We're asking the Court to affirm the judgment in this case. I think the record is clear under any of the factors that are relevant in seeing if there was a waiver, that a waiver did occur in this case. There was a call. I don't know what that means, a waiver. He obviously wants a lawyer in sentencing. No, I respectfully disagree, Your Honor. What happened, we need to back up and look at the history. First, he starts rattling his sabers about wanting to proceed pro se back in February of 2014. He comes back from his competency hearing. He raises the issue at least somewhat again on June 26th. And then on the day of his sentencing hearing of July 30th, his attorney comes in and says, he wants to represent himself. At that time, a colloquy takes place. And twice, he says explicitly once, yes, I insist on representing myself. The Court then admonishes him that I think this goes without saying, but this is the worst idea you have ever had. And he said, with that admonition, do you still want to represent yourself? And he said, yes. So what I think the Court is talking about is when the sentence. No. So in the middle of the sentence? He changed his mind. Your Honor, that is not uncommon from someone manipulating the system. I don't see how he's manipulating the system if he gets a lawyer. What's the manipulation? Well, if we could back up, he first had two lawyers. All right, so what? I don't understand. What is the big deal about giving him a lawyer for sentencing? He had a lawyer for sentencing. Now he realized he's really in trouble and facing a very long sentence. So now he wakes up and decides, I need a lawyer. I don't know anything about sentencing. So he wants a lawyer. He understood he was facing a very long sentence long before he first said, I want to represent myself. I know, but look, you're not dealing with a brilliant person or anything like that. He finally, when it comes to the point where he's actually facing a sentence, he's been convicted, he's facing a sentence, he realizes he needs a lawyer because he doesn't know anything about sentencing. What's he going to say? He does not have... And what's the big deal? When you consider what this person is facing in the way of a punishment, why not let him have a lawyer? May I answer your question? Well, obviously I asked you a question, so you may answer it. The big deal is that you have litigants jumping back and forth between... So what? Well, I believe that's why this court has said it's within the district court's discretion of whether there's a waiver. I don't know. When there's so much at stake for this guy and we're just talking about a lawyer at sentencing, what is the big deal? Now, if in the middle of the sentencing proceeding he fires the lawyer, sure, at that point, yes, you're dealing with someone who is completely incorrigible. But for all we know, if you give him a lawyer sentencing, he will sit there quietly and the lawyer will do what he can to try to get his sentence a little lower. But the example you just gave... When you consider the stakes for this person, I don't understand the judge getting so annoyed. What is the big deal? I was in the courtroom. The court was not annoyed. The big deal is you have a litigant... The transcript makes him sound very annoyed. He says, I can predict your behavior, and I think that is a reasonable... Well, I don't understand predicting other people's behavior.  Judge, I'm trying my best to answer your questions. A district judge can stay calm while recognizing the system is being manipulated. Could you remind us, Mr. Walters, about the sequence in terms of conviction, the malingering effort to appear incompetent, the competency evaluation, and then the request to proceed without a lawyer? Thank you, Your Honor. Yes. The case was tried in the summer of 2013. That was with counsel? That was with Mr. Sharnock as his counsel. Mr. Sharnock files a post-trial motion. Mr. Harrington then files a letter under seal with the court saying Mr. Sharnock was ineffective. The court recognizes, okay, we have an issue here. I'm going to appoint you new counsel. Mr. Luffell was appointed. In January, I believe, 25th of 2014, Mr. Harrington's counsel, Mr. Luffell, files a motion for a competency examination after having gone over the pre-sentence report with his client on January 19th, line by line, which showed he was a career offender. Mr. Harrington, may I complete my answer? Please. The court grants that motion with much skepticism because Mr. Harrington's claiming delusional beliefs, but there's been no evidence of that. He then goes, throughout the proceedings, then goes to the Bureau of Prisons for a competency examination, and the psychologist or psychiatrist finds that he's exaggerating his symptoms, making statements such as there's a conspiracy, much like the folks at WGN of committing crimes. Look, suppose if he'd had a lawyer at sentencing, he would have received five years lower sentence. Just suppose. It's possible, isn't it? That he received a sentence five years longer because he had a lawyer or did not have a lawyer? No, no. I'm saying if he had had a lawyer, suppose if he'd had a lawyer, he would have received five years shorter sentence. Is that possible? I won't say it's impossible. I mean, anything's possible, Your Honor. Anything is possible? No, not anything's possible. Respectfully, I know you're hypothetical. All right, suppose he would have gotten five years lower sentence. So, you're saying, if that's true, if that's a possibility, you're saying, well, yeah, this guy's a pain in the rear end. So, we're going to punish him by giving him five years longer sentence. I've said nothing of the sort. Pardon me? I've said nothing of the sort that we are punishing him for proceeding pro se. No, no. But don't you understand the point? If he would have received a slightly lower sentence with a lawyer, then by denying him the lawyer, you punish him for being a pain with an extra five years.  He shows up for sentencing on July 30th and says, I want to proceed pro se. And so the court allows him to exercise that constitutional right. He has to. And I guarantee you, had the court not done that, we would be up here today arguing that Mr. Harrington was denied his constitutional right to represent himself. That's what we would be arguing today. So, you're saying he didn't express a desire for a lawyer at sentencing? When we first show, yes, when the sentencing hearing finally did take place on September 2nd, mid-hearing, when he loses his pretrial motions, he then says, okay, now I want a lawyer in the middle of the hearing. But when we first show up for sentencing on July 30th. Look, he's being a pain. I understand. And in the middle of the hearing, he asks for the lawyer. But given the stakes to him and the fact that we all know these people cannot represent themselves competently, why is it such a big deal to let him have a lawyer? I don't get it. And then when he does have the lawyer, Your Honor, and we show up then two weeks later, it's September 16th, and now he's having a problem with his third lawyer. And he says, now I want to represent myself again. And then he tries to do that. We could go back and forth potentially with the pro se litigant to where there is no finality. Under this court's waiver principles, under the colloquy that took place, under the context of this case, and Mr. Harrington wanting his case done his own way, I think the court was very prudent in stating at that hearing on September 2nd, I believe, that I can predict what you will do. He has gamed the system and done so somewhat successfully up to this point by causing delays to his behavior. He got what he asked for, which was to represent himself. Everyone games the system. I would respectfully disagree. Prosecutors game the system. I disagree. Of course they do. I do not game the system, Your Honor. How long was it from the time he was found guilty until he was sentenced? I believe he was found guilty in June of 2013. He was sentenced in September 2014, Your Honor, because there was a replacement of counsel, there was the competency examination, and then he said he wanted to proceed pro se, and that delayed until September 2nd of 2014. That's somewhat longer than normal. Usually we're 90 to 100, I think 120 days absent, some type of complexity between the conviction and the sentence. Just to make sure I understand, did you say that he starts off the sentencing hearing and he has a lawyer, and in the middle he says he doesn't want the lawyer anymore? I apologize by confusing the court. On July 30th, the day the sentencing hearing was scheduled for, he has a lawyer. He shows up. He says, I want to proceed pro se. The court grants his request, sets a sentencing hearing for September 2nd, and then in the middle of the September 2nd hearing, after his post-trial pro se motions were denied, he says, okay, I now want a lawyer. Right. So he did actually, at the end, during the sentencing, he did want to have a lawyer. And as I say, I don't understand why it's such a big deal. Given the stakes to him and the fact that he's quite helpless without a lawyer, why couldn't the judge say, okay, I'll give you a lawyer. This is your last chance. You have to listen to this lawyer. The court could have done that, yes. Right. But the question is whether the court abused its discretion by not doing so. What does abuse of discretion mean? I'm tired of hearing that term after 34 years. Tell me what it means. Whether any other reasonable jurist could agree with the district court's decision or whether it was arbitrary, and I don't think any of that occurred in this case. At the sentencing hearing, didn't Mr. Harrington call some witnesses? He called four witnesses. He called two siblings, his mother and his father. In fact, when he said he couldn't do a sentencing, the court said do you have any evidence to put on, he had four witnesses prepared to be put on. Okay. And I would submit actually did a pretty good job of examining those witnesses. We are not dealing, Your Honors, with the simpleton. He had a four-point GPA from one college, a 3.1 GPA from another. I know I'm well over my time. I'm trying to be responsible. You did tell the judge to check his GPA, didn't you? Actually, Mr. Harrington said check my GPA. That's what I mean, yeah. Back in February, I think it was the February 6th hearing of 2014. I can't remember. It was the February hearing when he said I'm confident. Check my GPA. Well, okay. Maybe we'll say no lawyers for people whose GPA is… Not if he doesn't want a lawyer. Thank you, Your Honors. Okay. Thank you, Mr. Walker. Ms. Bierma, do you have anything to say? I recognize, Your Honors, that I don't have any time for rebuttal, but I just wanted to clarify. That's okay. Go ahead. I just wanted to clarify one of the court's questions. At the September 2nd, 2014 hearing, what Mr. Harrington said is, as my actual sentencing phase, I don't think I'm capable of actually representing myself through the actual So he filed the pro se post-trial motions, but then once he got to the actual sentencing phase, he did articulate the fact that he did want a lawyer. And for those reasons, I would respectfully request a remand back to the district court for resentencing. Okay. Well, thank you very much, Ms. Bierma. And you were appointed? I was, Your Honor. Yes. We thank you. We thank Mr. Walters as well, of course.